## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

JAVALE DAVIS,

     Plaintiff,

v.                                Case No.  3:18-cv-1382-LC-MJF

RANDALL BRYANT, *et al.*,

     Defendants.

_____/

## REPORT AND RECOMMENDATION

This prisoner civil rights case, filed under 42 U.S.C. § 1983, is before the court upon Defendants' motion for summary judgment. (Doc. 63). Plaintiff did not file a response in opposition to the motion, despite receiving notice and an opportunity to do so. (Doc. 64). The undersigned recommends that Defendants' motion for summary judgment be granted.[1]

### I.    Background and Procedural History

Plaintiff Javale Davis initiated this action on May 24, 2018, by filing a civil rights complaint under 42 U.S.C. § 1983. (Doc. 1). Davis filed an amended

_____

[1] The court referred this case to the undersigned to address preliminary matters and to make recommendations regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(C); *see also* 28 U.S.C. § 636(b)(1)(B), (C); Fed. R. Civ. P. 72(b).

complaint on December 6, 2018, which is the operative complaint. (Doc. 11). Davis is suing three prison officials at Century Correctional Institution: former Warden Randall Bryant, Classification Supervisor Julie Bowman, and Major Michael DeLapp. (*Id.*; *see also* Doc. 23). Davis is suing the Defendants in their individual capacities. (Doc. 11 at 1, 14-15).

Davis claims that Bryant, Bowman, and DeLapp violated his Eighth Amendment right to be free from cruel and unusual punishments in January 2017, when they recommended that his request for "protective management" be denied. (Doc. 11). Davis claims that as a result of Defendants' deliberate indifference to his safety, he was attacked by an unidentified inmate in April 2017, and sustained physical injuries. (*Id.*). From each Defendant, Davis seeks $100,000 in compensatory damages and $100,000 in punitive damages. (*Id.* at 14-15).

Defendants argue that the court should grant summary judgement because: (1) there is no evidence they were deliberately indifferent to Davis's safety, and (2) they are entitled to qualified immunity. (Doc. 63). Davis did not respond to Defendants' motion for summary judgment.[2]

---

[2] Davis has not responded to the last two court orders. (*See* Docs. 59, 64). His last filing in this case was on December 13, 2019. (Doc. 57).

## II.    Facts

### A.    Florida Department of Corrections' Institutional Terms and Procedures

Davis's amended complaint and the evidence in the summary judgment record refer to various Florida Department of Corrections ("FDC") institutional terms and procedures. Those terms and procedures are defined here.

The FDC's inmate classification system "is comprised of two primary operational components which have been established to provide uniformity and consistency in both the development and implementation of classification policies and procedures." Fla. Admin. Code r. 33-601.209(1). These two components are "the State Classification Office and the Institutional Classification Team." *Id*. These components "[have] responsibility relative to the operation and management of the inmate classification system." *Id*.

The Institutional Classification Team ("ICT"), in particular, "is responsible for making work, program, housing and inmate status decisions at a facility and for making other classification recommendations to the State Classification Office (SCO)." Fla. Admin. Code r. 33-601.209(3).

The SCO is "the office or office staff at the central office level that is responsible for the review of inmate classification decisions." Fla. Admin. Code r. 33-601.209(2). The SCO's duties "include approving, disapproving, or modifying Institutional Classification Team (ICT) recommendations." *Id*. The SCO,

exclusively, makes the final determination whether an inmate should be placed in protective management. Fla. Admin. Code r. 33-602.220(3)(c)(5).

Administrative Confinement "refers to the temporary removal of an inmate from the general population in order to provide for security and safety until such time as a more permanent inmate management decision can be concluded such as disciplinary confinement, close management, protective management or transfer." Fla. Admin. Code Ann. r. 33-602.221(1)(a); *see also* Fla. Admin. Code Ann. r. 33-602.220(1)(a). The FDC's administrative rules also provide:

> Inmates shall be placed in administrative confinement pending review of the inmate's request for protection from other inmates, (Rule 33-602.221, F.A.C.). The inmate shall be placed in administrative confinement by a senior correctional officer when the inmate presents a signed written statement alleging that the inmate fears for his safety from other inmates, and that the inmate feels there is no other reasonable alternative open to him. A senior correctional officer shall place an inmate in administrative confinement, pending review for protective management, based on evidence that such a review is necessary and the senior correctional officer determines that no other reasonable alternative is available. The inmate shall be encouraged to provide information and otherwise cooperate with the investigation of the matter. The protective management process, including the ICT's action, shall be completed within 15 working days from the initial confinement of the inmate.

Fla. Admin. Code Ann. r. 33-602.220(3)(c).

Protective management "refers to the separation of an inmate from the general population in a structured environment for purposes of safety, security, and order of

the facility." Fla. Admin. Code r. 33-602.221(1)(j). The following guidelines are

used for determining placement in protective management:

> Once the investigation is complete, the ICT shall interview the inmate to determine whether the inmate has a legitimate, verifiable need for protection. The ICT shall review all documentation available concerning the need for protection to include any written statements submitted by the inmate. The inmate's written request for release and the DC6-203 will also be reviewed. The following elements shall be considered in determining whether protective management is necessary:

>> a. A record of having been assaulted;

>> b. A reputation among the inmate population, attested to in writing by staff, as an informant or trial witness;

>> c. Verified threats, verbal abuse, or harassment;

>> d. A former criminal justice activity resulting in verified threats, verbal abuse, or harassment;

>> e. A conviction of a crime repugnant to the inmate population;

>> f. Reliable, confirmed evidence of sexual harassment;

>> g. Other factors such as physical size, build and age producing a risk from the general inmate population.

Fla. Admin. Code Ann. r. 33-602.220(3)(c)(3).

Security Threat Group ("STG") "refers to formal or informal ongoing

inmate/offender groups, gangs, organizations, or associations consisting of three or

more members" who have one or more of the following characteristics:

> 1. A common name or common identifying signs, colors, or symbols;

Page 5 of 28

2.  Members or associates who individually or collectively engage in or have engaged in a pattern of gang activity, criminal activity, or Department rule violations; or

3.  Potential to act in concert to pose a threat or potential threat to the public, staff, visitors, other inmates or offenders, or the secure and orderly operations of an institution, probation office, other Department property, or Department activity or function.

Fla. Admin. Code r. 33-601.800(1)(s).

## B.    The Facts Underlying Davis's Claims

The following facts are drawn from Davis's verified amended complaint (Doc. 11) and the evidentiary materials attached to Defendants' motion for summary judgment. (Doc. 63).[3] When the parties offer conflicting accounts of the events in question, the court "sets forth the facts, drawn from the evidence presented, in the light most favorable to the plaintiff." *See Snow ex rel. Snow v. City of Citronelle*, 420 F.3d 1262, 1265 (11th Cir. 2005).

On December 23, 2016, Davis disobeyed an order to return to his dormitory and was placed in Administrative Confinement pending disciplinary action. (Doc.

---

[3] "A *pro se* plaintiff's complaint, . . . if verified under 28 U.S.C. § 1746, is equivalent to an affidavit, and thus may be viewed as evidence. Nevertheless, '[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge.'" *Howard v. Memnon*, 572 F. App'x 692, 694 (11th Cir. 2014) (*citing Murrell v. Bennett*, 615 F.2d 306, 310 n.5 (5th Cir. 1980), and quoting Fed. R. Civ. P. 56(c)(4)) (footnote omitted).

63, Ex. A, Bowman Decl. at 2, ¶ 6(a)). Davis pleaded guilty to the disciplinary charge on January 3, 2017. (*Id.*).

On January 13, 2017, Davis informed Captain Smith that "some inmates" were trying to extort him and had threatened his life. (Doc. 11 at 5, ¶ 1). Smith "follow[ed] correct protocol," and Smith and Sergeant Fisher escorted Davis to administrative confinement. (*Id.* at 5, ¶ 2-3).[4]

Captain Smith completed a "Report of Protective Management Form," stating, in relevant part:

> Inmate Davis Javale DC# B11270 is being placed in Administrative Confinement on 1-13-16 [sic] at 2000, Code as Protective Management, per Captain D.M. Smith. Inmate Davis stated that 5 black inmates approached him with knives and threaten[ed] him to get off the compound.

(Doc. 63, Ex. D at 1).

Sergeant Fisher instructed Davis to write a witness statement detailing the reason he needed protection. (Doc. 11 at 5, ¶ 4). Davis alleges that he wrote a witness statement, but neither Davis nor the Defendants provided this court with a copy of the alleged written statement. (Doc. 11; *see also* Doc. 63). Davis does not describe the substance of his written statement. (Doc. 11 at 5, ¶ 5). Defendant Bowman attests that Davis's written statement "provided the names of Carlos Davis and Tray

---

[4] Captain Smith and Sergeant Fisher are not named as Defendants in this lawsuit.

Watson." (Doc. 63, Ex. A, Bowman Decl. at 5, ¶ 13). Sergeant Fisher told Davis that

"the gang Sergeant" would interview Davis in a couple of days. (Doc. 11 at 5, ¶ 5).

Sergeant Charles Payne investigated Davis's request for protection.[5] On

January 19, 2017, Payne interviewed Davis and reported the following:

> Inmate Davis, Javale #B11270 stated that he was in fear for his
> life from other inmates. Inmate Davis was interviewed and stated that
> in early December he was approached by Inmates Watson, Tray
> #J37166, Davis, Carlos #H14161 and Ingram, Artiez #J56577 while
> going to chow. Inmate Davis stated that they owed him a homemade
> weapon and told him that he was going to hold their cell phone and
> drugs for them or they would cut him. Inmate Davis stated that he
> refused and requested protection. Inmate Davis, Javale is not listed in
> STORMS as a STG member. Inmate Davis, Carlos is not listed in
> STORMS as a STG member. Inmate Watson, Tray #J37166 is listed in
> STORMS as a suspected member of the STG Cut Throat Committee.
> Inmate Ingram is not listed in STORMS as a STG member.

(Doc. 63, Ex. D at 1; *see also* Doc. 11 at 6, ¶¶ 6-10). Payne informed Davis that he

would schedule a hearing for Davis with the ICT. (Doc. 11 at 6, ¶ 11).

Davis appeared before the ICT on January 27, 2017. (Doc. 63, Ex. D at 1).

The ICT was comprised of Defendant Bowman, Defendant DeLapp, and Jonathan

Hutchins. (Doc. 63, Ex. D at 1).

At the hearing, Bowman informed the team members of the conviction(s)

underlying Davis's current incarceration. (Doc. 63, Ex. B, DeLapp Decl. at 1, ¶ 5;

Doc. 11 at 8, ¶ 21). Davis was asked for the names of the inmates whom he feared

---

[5] Sergeant Payne is not named as a Defendant in this lawsuit.

would stab him. (Doc. 11 at 7, ¶ 16). Davis responded: "the inmates['] names are written in my witness statement I gave to Sgt. Payne, and besides not knowing the names of the inmates does not take away the risk of me getting harm[ed]." (*Id*. at ¶ 17). Davis also stated: "Just like I told Sgt. Payne I'm going to tell you also, the inmates whom threatened me specifically said if I told on them I'll be stab[bed] by their unknown gang brothers, so basically what they were saying is that they'll have a hit out on me." (*Id*. at ¶ 18).

Bowman informed Davis that, according to FDC records, Inmates Ingram and Carlos Davis had no STG affiliation but that the FDC suspected that Inmate Watson was affiliated with STG. (Doc. 11 at ¶¶ 21, 23).[6] Davis responded: "I seriously need some form of help I am scared to go back into open population, I know for a fact that the threatners [sic] 'unknown' gang brothers are out to harm me." (*Id*. at ¶ 22). Davis also stated that many inmates were gang members even though the FDC had not identified them as such. (*Id*. at ¶ 23).

---

[6] Davis alleges that when Bowman related the information from the FDC's electronic database, she told him that "the computer . . . *verified* that inmate Watson is a gang member." (Doc. 11 at 8, ¶ 21) (emphasis added). This allegation does not raise a genuine factual dispute about whether Bowman believed Watson to be a *verified* gang member or a *suspected* gang member, because the "Report of Protective Management" itself establishes the information Bowman was given, namely, that Watson was "listed in STORMS as a *suspected* member of the STG Cut Throat Committee." (Doc. 35, Ex. D at 1) (emphasis added).

At the conclusion of the hearing, the ICT (Bowman, DeLapp, and Hutchins) recommended that Davis's request for protective management be denied for the reason that there was "no confirmed risk." (Doc. 63, Ex. D at 1). The ICT explained: "Inmate does not meet the criteria for placement in a Protective Management Unit per Chapter 33-602.221. His information was vague and the investigator was unable to ascertain any leads." (*Id*.).

DeLapp elaborates in his affidavit:

> There was no way of confirming or denying [Davis's] accusations and claims that he needed protection from other "gang member" inmates.

> As an ICT team, we heard many cases weekly of inmate threats, promises, accusations, and concerns of violence, theft, extortion, gambling and other illegal acts that inmates use to manipulate the system to be housed alone or transferred.

> [I]t was practically impossible to verify [Davis's] claims without specific information, like the names of the aggressors. . . .

(Doc. 63, Ex. B, DeLapp Decl. at 2,  ¶¶ 8-9).

Bowman elaborates in her affidavit that (1) "Davis was unable to provide information to support meeting the criteria of [the protective management] guidelines;" and (2) Davis failed to "present credible evidence of the threat against him." (Doc. 63, Ex. A, Bowman Decl. at 3-5, ¶¶ 7, 9, 12).

On January 31, 2017, SCO Dittman reviewed the ICT's recommendation and requested the following additional information: "What did the 3 inmates have to say

what occurred?" (Doc. 63, Ex. D at 1).[7] After additional investigation, Sergeant

Payne reported (as emphasized in italics):

> Inmate Davis, Javale #B11270 stated that he was in fear for his life from other inmates. Inmate Davis was interviewed and stated that in early December he was approached by Inmates Watson, Tray #J37166, Davis, Carlos #H14161 and Ingram, Artiez #J56577 while going to chow. Inmate Davis stated that they owed him a homemade weapon and told him that he was going to hold their cell phone and drugs for them or they would cut him. Inmate Davis stated that he refused and requested protection. Inmate Davis, Javale is not listed in STORMS as a STG member. Inmate Davis, Carlos is not listed in STORMS as a STG member. Inmate Watson, Tray #J37166 is listed in STORMS as a suspected member of the STG Cut Throat Committee. Inmate Ingram is not listed in STORMS as a STG member. *Inmate Ingram was interviewed and stated he didn't know Inmate Davis. Inmate Davis, Carlos was interviewed and stated he had no knowledge of the incident. Inmate Watson was interviewed and stated he had no knowledge of the incident.*

(Doc. 63, Ex. D at 1) (emphasis added).

The final decision to deny Davis's request for protection was made by the

SCO. (Doc. 63, Ex. A, Bowman Decl. at 4, ¶ 10; Ex. D). SCO Dittman disapproved

Davis for protective management on February 21, 2017, (Ex. D at 2), for this reason:

> Inmate Davis requested protection due to his allegations that several inmates approached him and threatened[ed] him. Inmate Davis stated he was threaten[ed] and that if he did not hold their contraband, they would hurt him. Security could not confirm this information. Deny request for protection.

---

[7] SCO Dittman is not named as a Defendant in this lawsuit.

(Doc. 63, Ex. A, Bowman Decl. at 4, ¶ 10).[8]

Davis appealed the SCO's decision. (Doc. 11 at 10, ¶ 37; Doc. 63, Ex. A, Bowman Decl. at 4, ¶ 11). The appeal was denied, stating:

> We uphold the Institutional Classification Team and State Classification Team decision to deny you protective custody at this time. You have provided no substantial evidence to show a need for special protective measures above and beyond our normal security operations.

(Doc. 63, Ex. A, Bowman Decl. at 4-5, ¶ 11).

On March 22, 2017, the FDC released Davis from administrative confinement and placed him in the open population. (Doc. 11 at 10, ¶ 38).

On April 27, 2017, while in the recreation yard, someone approached Davis from behind and stabbed him twice. (Doc. 11 at 10, ¶ 39; Doc. 63, Ex. E at 2). The recreation yard was closed and all inmates were pat searched and checked for altercation wounds. No suspect was identified. (Doc. 63, Exs. E, F). During a search of the recreation yard, a 6-inch homemade weapon was discovered in a toilet in the recreation yard bathroom, but nothing linked the homemade weapon to the attack on Davis. (*Id.*).

---

[8] SCO Dittman's stated reason for denying Davis protective management was related by Bowman in her affidavit. (Doc. 63, Ex. A, Bowman Decl. at 4, ¶ 10). Courts may consider hearsay statements and unsworn prison records on summary judgment review, because that evidence can be reduced to admissible evidence at trial. *See Muhammad v. Sapp*, 494 F. App'x 953, 956 n.3 (11th Cir. 2012)

Davis sustained two stab wounds—a 2.6 cm laceration to his right neck and a 3.0 cm laceration to his right shoulder blade. (*Id*. at ¶ 40; *see also* Doc. 63, Ex. E at 1). FDC personnel took Davis to the medical department where he received stitches and acetaminophen. (Doc. 11 at 10, ¶ 41). According to Davis, "[b]oth stab wounds caused Plaintiff to be permanently disfigured." (*Id*. at 43).

Davis was placed in administrative confinement pending a full investigation. (Doc. 63, Ex. E). Andrew Tokajer of the office of the inspector general investigated the incident and determined that nothing linked the homemade weapon found in the recreation yard toilet to the attack on Davis. (Doc. 63, Ex. F). The attack was not captured on surveillance cameras. (*Id*.). No suspects were identified. (*Id*.). Tokajer interviewed Davis on May 8, 2017. (Doc. 63 at Ex. F; Doc. 11 at 11, ¶ 44). Davis informed Tokajer that he did not want the incident formally investigated and that he did not want to pursue criminal charges. (Ex. F). Based on Davis's desire not to have the formal investigation continue, Tokajer recommended that the investigation be closed. (*Id*.).

On July 25, 2017, Davis was transferred to a different institution. (Doc. 11 at 11, ¶ 46).

## III.   Relevant Legal Standards

Davis claims that Warden Bryant, Julie Bowman, and Michael DeLapp violated his Eighth Amendment right to be free from cruel and unusual punishments

Page 13 of 28

when they recommended that his request for protective management be denied. (Doc. 11 at 12-13). Davis asserts that Defendants' deliberate indifference caused him to be attacked on April 27, 2017, resulting in physical injuries, pain, and suffering. (*Id.*). Bryant, Bowman, and DeLapp assert in their motion for summary judgment that: (1) Davis cannot prove that they were deliberately indifferent to a substantial risk of serious harm; and (2) they are entitled to qualified immunity. (Doc. 63).

## A.    <u>Summary Judgment Standard</u>

Rule 56 of the Federal Rules of Civil Procedure states that a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party. *See Mann v. Taser Int'l, Inc*., 588 F.3d 1291, 1303 (11th Cir. 2009). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). A "genuine" dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004). An issue of fact is "material" if it could affect the

outcome of the case. *Anderson*, 477 U.S. at 248; *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995). In evaluating a summary judgment motion, all "justifiable inferences" must be resolved in the nonmoving party's favor so long as there is a genuine dispute as to those facts. *Beard v. Banks*, 548 U.S. 521, 529 (2006); *see Scott v. Harris*, 550 U.S. 372, 380 (2007).

## B.   <u>Eighth Amendment Standard</u>

"[P]rison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (internal quotation marks and citations omitted). However "not . . . every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer*, 511 U.S. at 834. It is only a "prison official's deliberate indifference to a substantial risk of serious harm to an inmate [that] violates the Eighth Amendment." *Id*. at 828.

To establish an Eighth Amendment claim of deliberate indifference, a prisoner must prove "(1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation." *Hale v. Tallapoosa Cty.*, 50 F.3d 1579, 1582 (11th Cir. 1995).

"The first element of an Eighth Amendment claim—a substantial risk of serious harm—is assessed under an objective standard." *Lane v. Philbin*, 835 F.3d 1302, 1307 (11th Cir. 2016); *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090,

1099 (11th Cir. 2014) ("When examining the first element—a substantial risk of serious harm—the court uses an objective standard."); *Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2003) (holding that the risk "must be an objectively substantial risk of serious harm"). There must be a strong likelihood of injury as opposed to a mere possibility. *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990).

"The second element—the defendant's deliberate indifference to that risk— has two components: one subjective and one objective." *Caldwell*, 748 F.3d at 1099. The plaintiff "must show both that the defendant actually (subjectively) knew that an inmate faced a substantial risk of serious harm and that the defendant disregarded that known risk by failing to respond to it in an (objectively) reasonable manner." *Bowen v. Warden Baldwin State Prison*, 826 F.3d 1312, 1320 (11th Cir. 2016); *Marsh v. Butler Cty., Ala.*, 268 F.3d 1014, 1027 (11th Cir. 2001) ("[O]fficials, to be liable, must be aware of a substantial risk of serious harm to the inmates and not take reasonable measures to alleviate that risk.").

"Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence." *Farmer*, 511 U.S. at 842. The "degree of specificity" of the facts subjectively known to the defendant is a relevant consideration in determining whether the defendant knew the risk was substantial and the harm serious. *Bowen*, 826 F.3d at 1322. The trier of fact may conclude, however, "that a

Page 16 of 28

prison official knew of a substantial risk from the very fact that the risk was obvious." *Id.* at 1321 (citing *Farmer*, 511 U.S. at 842).

The Court in *Farmer* identified three ways in which prison officials might avoid Eighth Amendment liability. Officials might show that: (1) "they did not know of the underlying facts indicating a sufficiently substantial danger and that they were therefore unaware of a danger;" (2) "they knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent;" or (3) "they responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844.

The third and final element of an Eighth Amendment claim under § 1983 is causation. *Hale*, 50 F.3d at 1584. The plaintiff must prove that the prison official's conduct caused his injury. This requires proof of two causal links: "first, a link between [the prison official's] allegedly deliberately indifferent acts and omissions and the excessive risk of violence; and second, a link between the excessive risk of violence and [the prisoner's] injury."). *Id.*

## C.    <u>Qualified Immunity Standard</u>

"Under the qualified immunity doctrine, government officials performing discretionary functions are immune not just from liability, but from suit, unless the conduct which is the basis for suit violates clearly established federal statutory or constitutional rights of which a reasonable person would have known." *Sanders v.*

*Howze*, 177 F.3d 1245, 1249 (11th Cir. 1999) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "To be entitled to qualified immunity, the defendant must first establish that he was acting within the scope of his discretionary authority." *Gaines v. Wardynski*, 871 F.3d 1203, 1208 (11th Cir. 2017) (citing *Maddox v. Stephens*, 727 F.3d 1109, 1120 (11th Cir. 2013)). Discretionary authority includes all actions of a governmental official that "(1) were undertaken pursuant to the performance of his duties, and (2) were within the scope of his authority." *Dang ex rel. Dang v. Sheriff, Seminole Cty.*, 871 F.3d 1272, 1279 (11th Cir. 2017) (quoting *Rich v. Dollar*, 841 F.2d 1558, 1564 (11th Cir. 1988)).

Once that is shown, and it is undisputed here, "the burden shifts to the plaintiff to establish that qualified immunity is not appropriate." *Id.* at 1279. The plaintiff must prove that "(1) the defendant violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation." *Holloman v. Harland*, 370 F.3d 1252, 1264 (11th Cir. 2004). Even when there is a genuine factual dispute regarding whether a constitutional violation occurred, if the defendant did not act in violation of clearly established law, then the claim will not proceed past summary judgment. *Ansley v. Heinrich*, 925 F.2d 1339, 1348 (11th Cir. 1991) ("[I]f the law is not clearly established, the official is entitled to summary judgment regardless of factual disputes.") (quoting *Harlow*, 457 U.S. at 818).

"Clearly established means that, at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand that what he is doing is unlawful." *Dist. of Columbia v. Wesby*, 583 U.S. ___ , 138 S. Ct. 577, 589 (2018) (internal quotation marks and citations omitted). "[E]xisting precedent must have placed the statutory or constitutional question beyond debate." *Mullenix v. Luna*, 577 U.S. ___, 136 S. Ct. 305, 308 (2015). "Put simply, qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Id*. (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

## IV.   Analysis

### A.   <u>Randall Bryant Is Entitled To Summary Judgment Because Bryant Was Not Involved In The Decision To Deny Davis Protective Management</u>

There is no genuine dispute that former Warden Randall Bryant was *not* a member of the ICT that reviewed Davis's request for protection, and that he was unaware of the threat Davis reported on January 13, 2017.

Davis's verified original complaint alleged that the third member of the ICT was "Mr. Hudson, Warden." (Doc. 1 at 1-2). Davis's verified amended complaint alleged that "Warden Hudson or Bryan/Bryant" was the third member of the ICT. (Doc. 11 at 1-2, 7, ¶ 13).

Defendant Bryant's affidavit attests that: (1) he did not serve on the ICT that reviewed Davis's request for protection; (2) he was not ordinarily a member of that

classification team; (3) he did not deny Davis protective management status; and (4) he had no knowledge of Davis's alleged need for protection. (Doc. 63, Ex. C, Bryant Decl. at 1-2, ¶¶ 4-8). Bryant's assertion is supported by the "Report of Protective Management," which confirms that the third member of the ICT was Jonathan Hutchins, not Randall Bryant. (Doc. 63, Ex. D). Defendant Bryant's name appears nowhere in the record of Davis's protective management proceeding. (*Id*.).

Davis did not respond to Defendants' motion for summary judgment and has not addressed the evidence that Bryant was neither on the ICT that reviewed his January 13, 2017, request for protection, nor otherwise aware of the alleged threat Davis reported. On this record, Davis's ambiguous allegation—that it was either "Bryan/Bryant" or "Hudson" who served as the third member of the ICT team— could not lead a reasonable jury to find that Randall Bryant was involved in the decision to deny Davis protection management. *Scott*, 550 U.S. at 380 ("Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.").

Because the undisputed facts show that Randall Bryant was *not* on the ICT that recommended denying Davis's request for protection, and that Bryant was not involved in any aspect of the decision to deny Davis protection, Bryant is entitled to judgment as a matter of law on Davis's failure-to-protect Eighth Amendment claim.

**B.** **Julie Bowman And Michael DeLapp Are Entitled To Qualified Immunity Because Davis Has Not Demonstrated That They Violated A Clearly Established Eighth Amendment Right**

It is undisputed that Bowman and DeLapp were acting within the scope of their discretionary authority when they reviewed Davis's request for protective management. Accordingly, the burden shifts to Davis to demonstrate that qualified immunity is inappropriate. To do that, Davis must show that the facts, when viewed in his favor, create a genuine issue that: (1) Bowman and DeLapp violated his Eighth Amendment right to be free from cruel and unusual punishments; and (2) that the Eighth Amendment right was "clearly established . . in light of the specific context of the case, not as a broad general proposition," at the time they acted. *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled in part on other grounds by Pearson*, 555 U.S. 223 (2009). Because Davis has not met his burden to show the violation of a constitutional right, the court need not proceed past step one of the qualified-immunity analysis.

To satisfy the subjective component of his Eighth Amendment claim, Davis must prove that Bowman and DeLapp (1) "[were] aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed]," and (2) that they "drew the inference." *Rodriguez v. Sec'y for Dep't of Corr.*, 508 F.3d 611, 617 (11th Cir. 2007) (quotation omitted). "[O]fficials must possess enough details about a threat to enable them to conclude that it presents a 'strong likelihood' of

Page 21 of 28

injury, not a 'mere possibility.'" *Marbury v. Warden*, 936 F.3d 1227, 1236 (11th Cir. 2019) (quoting *Brooks v. Warden*, 800 F.3d 1295, 1301 (11th Cir. 2015)).

The material facts underlying Davis's deliberate indifference claim are not in dispute. As explained in the "Facts" section above, Bowman and DeLapp knew, through the protective management investigation and hearing, that Davis reported that Tray Watson, Carlos Davis, and Artiez Ingram told him that (1) "they owed him a homemade weapon and . . . that he was going to hold their cell phone and drugs for them or they would cut him"; and (2) "if [he] told on them [he would be] stab[bed] by their gang brothers." Davis additionally reported at the hearing that "the threatners 'unknown' gang brothers are out to harm me." Davis, however, did not identify the gang, and the FDC's records indicated that Watson, Ingram, and Carlos Davis were not "gang brothers." When confronted with this information at the ICT hearing, Davis provided no additional information to enable Bowman and DeLapp to make the inferential leap that the risk of violence was *substantial*. It bears noting that after Davis was released to the general population, he did not voice any additional concerns for his safety to Bowman or DeLapp—nor did he provide any additional information about the threat—in the *five weeks* he remained in general population before being stabbed by an unidentified assailant.

The Eleventh Circuit emphasized in *Marbury*, that "[s]uccessful deliberate-indifference claims will generally require some further reason—beyond the plaintiff

having informed the defendant officers of the threat—that a prison official could have concluded that a particular threat evidenced a substantial threat, rather than the mere possibility, of serious harm." 936 F.3d at 1236. Here, although Davis identified the inmates who threatened him for refusing to hide their contraband, and specified a potential assault by their "gang brothers," Bowman and DeLapp's investigation revealed that there was no gang affiliation between Watson, Ingram, and Carlos Davis. The record contains no additional facts about the risk of harm to Davis. A reasonable jury could not conclude from the facts offered by Davis that Bowman and DeLapp were *subjectively aware of a substantial risk of serious harm* to Davis at the time they reviewed his request for protection. "Subjective awareness of only *some* risk of harm to a prisoner is insufficient for a deliberate-indifference claim." *Marbury*, 936 F.3d at 1238.

Davis contends in his amended complaint that the stabbing itself demonstrates that the information he provided to the ICT instilled in the ICT knowledge that he faced a substantial risk of harm. (Doc. 11). As the Eleventh Circuit recognized in *Brooks*, however, "[t]his argument does not hold up to logical scrutiny; it rests entirely on hindsight bias." 800 F.3d at 1301. "The mere fact that an event takes place does not indicate how likely it was to occur." *Id*. A risk calculation—like the one Bowman and DeLapp were required to make in this case—

"is a prospective determination of what might happen" based upon the information they knew at the time. *Id.*

In sum, Davis has not proffered sufficient evidence to enable a reasonable jury to infer that Bowen and DeLapp actually knew that Davis faced a *strong likelihood* of serious harm if the FDC returned him to the general population. Accordingly, Davis cannot establish the subjective element of his deliberate indifference claim. *See Carter v. Galloway*, 352 F.3d 1346, 1349-50 (11th Cir. 2003) (holding that plaintiff-prisoner's report to prison officials—that his cellmate was acting crazy, was roaming their cell like a "caged animal," and had warned plaintiff that "one way or another" he was going to help the cellmate fake a hanging—"[did] not provide a sufficient basis [for prison officials] to make the inferential leap that a substantial risk of serious harm to Plaintiff existed," even when coupled with evidence that prison officials knew that the cellmate was a "problem inmate" with a well-documented history of prison disobedience and violent tendencies); *Marbury*, 936 F.3d at 1236-38 (holding that a reasonable jury could not find that the prisoner's statements—that he had heard from a friend that an unnamed prisoner intended to hurt him and that he was afraid of being hurt or killed—without any further details, were sufficient to make the defendants' aware of a substantial risk of serious harm); *see also Brooks*, 800 F.3d at 1301 (holding that prisoner's allegations—that he received (and told prison officials about) threats from prisoner in adjacent cell, that

Page 24 of 28

cell doors were known to open unintentionally, and that he was attacked by neighboring prisoner during a prison riot after all cell doors opened—were insufficient to plead a "strong likelihood of serious harm" sufficient to satisfy the objective component of a deliberate indifference claim).

Because Davis has not demonstrated the existence of a genuine issue of material fact regarding his allegation that Bowman and DeLapp violated a clearly established constitutional right, Bowman and DeLapp are entitled to summary judgment based on qualified immunity.

**C.    <u>Bowman And DeLapp Are Entitled To Summary Judgment For The Additional Reason That The Evidence Does Not Enable A Reasonable Jury To Infer That The Recommendation To Deny Davis Protective Management Caused Davis's Injuries</u>**

Even if this court were to conclude that the evidence—viewed in Davis's favor—is sufficient to enable a reasonable jury to find that Bowman and DeLapp were deliberately indifferent to the threat Davis reported in January 2017, Davis still must prove that their deliberate indifference caused his April 27, 2017, injuries. *Marbury*, 936 F.3d at 1233 ("Finally, the plaintiff must show a necessary causal link between the officer's failure to act reasonably and the plaintiff's injury"). Davis has not produced sufficient evidence to enable a rational trier of fact to find that Bowman's and DeLapp's response to the threat from Watson, Ingram, and Carlos Davis caused Davis's injuries.

The record contains no evidence indicating who stabbed Davis on April 27, 2017. The record also is devoid of evidence of a motive for the attack. Davis relies solely on the temporal sequence—his release to the general population on March 22, 2017, was followed 36 days later by the stabbing on April 27, 2017—to speculate that the two events are related. "Drawing such a conclusion from temporal relationships leads to the blunder of the *post hoc ergo propter hoc* fallacy." *McClain v. Matabolife Int'l, Inc*., 401 F.3d 1033, 1243 (11th Cir. 2005); *Sunward Corp. v. Dun & Bradstreet, Inc*., 811 F.2d 511, 521-22 (10th Cir. 1987). Those who fall prey to this fallacy mistakenly assume a causal relationship from the temporal sequence of events. *McClain*, 401 F.3d at 1243. "It is called a fallacy because it makes an assumption based on the false inference that a temporal relationship proves a causal relationship." *Id.* "*Post hoc* is not *propter hoc*." *Prather v. Sun Life & Health Ins. Co. (U.S.)*, 843 F.3d 733, 735 (7th Cir. 2016). To create a genuine issue of material fact as to causation, therefore, a litigant must assert something more than *post hoc ergo propter hoc*.

But assuming that this temporal sequence could serve as circumstantial evidence of causation, the *five-week interval* between Davis's entry into the general prison population and his stabbing means that the attenuation is simply too great to create a genuine issue as to causation. *Cf. Stallworth v. Tyson*, 578 F. App'x 948, 951 (11th Cir. 2014) (concluding, in the context of a First Amendment retaliation

Page 26 of 28

claim, that two weeks constitutes a close temporal proximity that weighs in favor of a causal relationship); *Johnson v. Razdan*, 564 F. App'x 481, 482 (11th Cir. 2014) (concluding, in the context of an Eighth Amendment medical deliberate indifference claim arising from prisoner's allegation that prison doctor botched a biopsy which led to permanent damage to his prostate, that the prisoner's own conclusory assertion of causation, even when combined with the close temporal proximity between the biopsy and the prisoner's ailments that followed, did not create a triable issue on the element of causation).

Aside from the five-week interval, the record contains no other evidence of causation, for example, that Davis received additional threats or that Davis voiced to Bowman or DeLapp additional concerns about his safety.[9] The sequence of events is insufficient to support an inference that Bowman's and DeLapp's recommendation to deny Davis protective management caused Davis's injuries. Accordingly, Defendants are entitled to summary judgment in their favor for the additional reason that Davis has not produced sufficient evidence to establish a genuine issue of fact on the element of causation—an essential element of his Eighth Amendment claim.

---

[9] Davis states that *after* the attack, he filed grievances asserting that the attack could have been avoided had his request for protective management been approved. (Doc. 11 at 11, ¶ 45). Davis's hindsight-based complaints, however, were voiced *after* the attack.

## V.    Conclusion

For the reasons set forth above, the undersigned respectfully **RECOMMENDS** that:

1.    Defendants' motion for summary judgment (Doc. 63) be **GRANTED**.

2.    The District Court enter a summary judgment in favor of Defendants Bryant, Bowman, and DeLapp, and against Plaintiff Davis.

3.    The clerk of the court be directed to close this case file.

At Panama City, Florida, this 25th day of September, 2020.

/s/ *Michael J. Frank*
**Michael J. Frank**
**United States Magistrate Judge**

## <u>NOTICE TO THE PARTIES</u>

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days of the date of the Report and Recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u> An objecting party must serve a copy of the objections on all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**